Filed:  August 24, 1998

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 96-1148
(CA-89-2851-2-8)

———————

Beazer Materials and Services, etc., et al,

Defendant & Third Party Plaintiff - Appellants,

versus

Acrico Chemical Co., et al,

Defendant & Third Party Plaintiff - Appellees.

———————

O R D E R

———————

The court amends its opinion filed January 21, 1998, as follows:

On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

On page 2, section 4, line 1 -- the status line is changed to begin "Affirmed by published opinion. . . ."

On page 2, section 6 -- the reference to use of unpublished opinions as precedent is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

H. GEORGE DENT, JR.; ASHLEY
REALTY COMPANY, INCORPORATED, a
South Carolina Corporation;
SOUTHERN DREDGING COMPANY,
INCORPORATED, a South Carolina
Corporation,
Plaintiffs,

v.

BEAZER MATERIALS AND SERVICES,
INCORPORATED; BEAZER EAST,
INCORPORATED,
Defendant & Third Party
Plaintiff-Appellants,

v.

AGRICO CHEMICAL COMPANY;                    No. 96-1148
CONTINENTAL OIL COMPANY;
AMERICAN AGRICULTURAL CHEMICAL
COMPANY; FOS-KEM LIQUIDATION
CORPORATION,
Defendant & Third Party
Plaintiff-Appellees,

and

CELANESE POLYMER SPECIALTIES
COMPANY; HANSON PLC; HANSON
INDUSTRIES,
Defendants,

v.

BRASWELL SHIPYARDS, INCORPORATED,
Third Party Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CA-89-2851-2-8)

Argued: April 7, 1997

Decided: January 21, 1998

Before WIDENER, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and DOUMAR, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the
opinion, in which Judge Widener and Senior Judge Doumar joined.

_____

**COUNSEL**

**ARGUED:** Robert E. Stepp, GLENN, MURPHY, GRAY & STEPP,
L.L.P., Columbia, South Carolina, for Appellants. Mark Richard
Zehler, Legal Department, CONOCO, INC., Houston, Texas; Samuel
J. Morley, HOLLAND & KNIGHT, Tallahassee, Florida, for Appel-
lees. **ON BRIEF:** Robert C. Rhodes, GLENN, MURPHY, GRAY &
STEPP, L.L.P., Columbia, South Carolina; Elizabeth H. Warner,
BUIST, MOORE, SMYTHE & MCGEE, P.A., Charleston, South
Carolina, for Appellants. Lawrence N. Curtin, HOLLAND &
KNIGHT, Tallahassee, Florida; Maureen E. Mahoney, Michael P.
Vandenbergh, John C. Marchese, LATHAM & WATKINS, Washing-
ton, D.C.; Michael A. Scardato, MCNAIR LAW FIRM, P.A.,
Charleston, South Carolina, for Appellees.

_____

2

**OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by Beazer Materials and Services, Incorporated and Beazer East, Incorporated (Beazer) from a district court judgment finding Beazer liable in a private action brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601, et seq ., for all past and future response costs resulting from the environmental pollution of a CERCLA "Superfund" site, and holding Beazer liable under state law for contractual and equitable indemnification of two co-defendants. We affirm.

I.

The Superfund site at issue is made up of two adjoining tracts of land on or near the Ashley River in Charleston, South Carolina. A 45-acre tract (the Koppers property) was owned from 1930 to 1977 by the Koppers Co., Inc., of which Beazer is the corporate successor. During that period, Koppers operated a large wood-treating plant on the property. The other tract of 57 acres (the Dent property) was owned from 1921 to 1963 by the American Agricultural Chemical Co. of Connecticut, from 1963 to 1972 by Continental Oil Co. (Conoco), and from 1972 to 1978, by Agrico Chemical Co. (Agrico). Until mid-1972, the successive owners of the Dent property operated a fertilizer manufacturing plant at the site. Following two intervening ownerships, this tract was bought in two parcels by George Dent in 1983 and 1986, and was thereafter owned and used for various purposes by two Dent enterprises, Southern Dredging Co., Inc. and Ashley Realty Co., Inc. (collectively, Dent). From 1963 to 1968, Beazer leased from Conoco (which assumed a prior lease) a 4-acre parcel of the Dent property that adjoined the Koppers property, for use in connection with its wood-treating operation. The lease contained an indemnification clause obligating the lessee to hold the lessor harmless from all claims arising out of the leased property's use.

The events giving rise to this litigation began in 1985, during Dent's ownership of the 57-acre tract. At that time, dredging of a barge canal on the Dent property released wood-treating chemicals

3

into the Ashley River. The resulting fish-kills and other consequences of pollution attracted national publicity and led to both state and federal intervention under relevant environmental protection laws.

The state and federal environmental investigations established the critical facts--not challenged in this litigation--that for nearly 50 years Koppers' environmentally unsound wood-treatment practices had caused an estimated five to seven million gallons of creosote to be released into the environment, including the soil of its own property and, by subsurface migration, that of the adjoining Dent property, and from there into the Ashley River. Specifically offending chemical constituents ("constituents of concern") under relevant provisions of CERCLA and other federal environmental law were determined to be those of creosote, Koppers' principal wood-treating agent. It is undisputed that during the time at issue, these chemicals were only released into the area at issue by Koppers/Beazer's wood-treating operation.

On December 5, 1989, with administrative remediation processes of the federal Environmental Protection Agency (EPA) underway as a result of the investigative findings, Dent commenced this action against, inter alia, Beazer, Conoco, and Agrico under relevant provisions of CERCLA and state law. Specifically, Dent sought recovery under CERCLA § 107(a), 42 U.S.C. § 9607(a), of any statutory response costs incurred or to be incurred as a result of the release of hazardous substances on its property, and under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), a declaratory judgment establishing the defendants' liability in any action seeking recovery of further response costs or damages related to such a release. Additionally, Dent sought recovery of compensatory and punitive damages and injunctive relief on a variety of pendent state-law claims: fraud, negligence, etc.

An extended four-year period of pre-trial pleading, discovery and motion practice followed. Its full details need not be recited at this point. It suffices for immediate purposes to note that when the case finally came on for trial on September 22, 1993, the following claims, cross-claims and counterclaims had been pleaded and remained for trial: (1) Dent's claims against Beazer under CERCLA § 107(a) for statutory response costs, under § 113(f)(1) for contribution, and under § 113(g)(2) for declaratory judgment as to future costs, and under

4

state law for damages and injunctive relief, and Beazer's generally corresponding CERCLA counterclaims against Dent; **1** (2) Conoco's cross-claims against Beazer, under CERCLA § 113(f)(1) for contribution, under § 113(g)(2) for declaratory judgment as to future response costs, and under state law for contractual or equitable indemnification of its litigation costs in defending against Dent's claims respecting the 4-acre parcel leased to Beazer, and Beazer's generally corresponding CERCLA counterclaims against Conoco; (3) Agrico's cross-claims against Beazer under CERCLA § 113(f)(1) for contribution, under § 113(g)(2) for declaratory judgment and under state law for equitable indemnification of its litigation costs, and Beazer's generally corresponding CERCLA counterclaims against Agrico.

Just before the case went to trial, the district court ruled as a matter of law that the indemnification provision in the Conoco/Beazer lease bound Beazer to indemnify Conoco for all litigation costs incurred by Conoco in defending against any claim arising out of Beazer's use of the leased 4-acre parcel.

On Conoco's motion, the case was bifurcated for trial. Tried first to a jury were the factual issues underlying the Conoco and Agrico indemnification claims against Beazer. On Conoco's contractual indemnification claim, the jury found that Dent's claim against Conoco did arise out of Beazer's use of the leased parcel. On Agrico's equitable indemnification claim, the jury found that the Dent claim against Agrico was based upon Beazer's creosote contamination of the Dent property. Based upon these jury findings, the district court later entered judgment for both Conoco and Agrico on their respective indemnification claims for litigation costs.

Following return of the jury verdict on the indemnification claim issues, Dent and Beazer settled and dismissed all the CERCLA and state-law claims and counterclaims between those two parties. This left for resolution only the CERCLA cross-claims and counterclaims between Conoco and Beazer and between Agrico and Beazer for response costs under § 107(a), contribution under § 133(f)(1), and declaratory judgment under § 113(g)(2).

_____

**1** Beazer, Conoco, and Agrico had in the interval settled and voluntarily dismissed the several claims and counterclaims between those parties.

5

The CERCLA cross-claims and counterclaims were tried over a four-day period from October 18 through October 21, 1993. On October 18, the day the trial commenced, Beazer filed a motion for leave to amend its CERCLA claims against Conoco and Agrico to allege, as newly discovered evidence, the presence on the Dent property of lead and other "non-wood treating constituents" in addition to the wood-treating creosote constituents that until then had been the sole basis of its cross-claims for response costs, contribution and declaratory judgment. Though resisting Beazer's contention that the proffered evidence was newly discovered, Conoco and Agrico consented, in order to avoid a continuance on the eve of trial, to allowing the proffered amendment. The district court did so, while imposing monetary sanctions, and the case proceeded to trial on the amended Beazer counterclaim.

The district court heard the case as so structured on voluminous documentary and testimonial evidence, including the recorded testimony and documentary evidence admitted in the jury trial. Following a hearing on several post-trial motions, the court took the case under submission on December 15, 1993.

Almost a year later, on October 12, 1994, with decision still pending, Beazer moved to reopen the case to allow proof that Conoco and Agrico were liable, by reason of their release of fertilizer constituents, for a larger share of response costs related to the Dent property than was indicated by the evidence adduced at trial. The motion was denied as untimely and prejudicial on January 9, 1995. On January 23, 1995, the court denied a similar request for reopening pursuant to Rule 103(a)(2), Fed. R. Evid., on the grounds that the proffered evidence had already been considered. On January 25, 1995, Beazer moved for reconsideration of the two previous orders. Following a hearing on this motion on February 14, 1995, it was denied. When Beazer persisted with suggestions for reopening, another hearing was held on March 2, 1995 to consider the matter, following which the district court proposed conditions upon which the record might be reopened for the purposes sought by Beazer. When Beazer indicated unwillingness to abide by the proposed conditions, the district court on May 2, 1995, denied Beazer's final motion for reconsideration of the previous orders refusing to reopen. Beazer moved again on November 27, 1995, for leave to supplement the record, and this

6

motion was denied on December 28, 1995, "for the reasons . . . previously stated."

In a comprehensive order filed on December 28, 1995, the district court made extensive findings of fact and conclusions of law disposing of the various claims pending for decision. Among the findings of fact were the following critical ones which we summarize: (1) Beazer (Koppers) was the sole user of wood treating chemicals on the Superfund site, and had during the 50 years of its operation at the site released between 5 and 7 million gallons of these chemicals which consisted principally of creosote, a dark, viscous liquid that contains several polynuclear aromatic hydrocarbons; (2) as a result of their subsurface migration, these chemicals were the cause of the Dent property contamination and were the reason that remediation efforts at the site were required; (3) Beazer knew its waste handling practices were unsound, but derived $16 million in economic benefit by consciously refusing to upgrade its waste handling system; (4) any harms caused by wood treating chemicals and fertilizer constituents could be separately identified because the substances have different chemical characteristics and because different types of actions are typically used to remediate them; (5) the relative toxicity, synergistic capacity, and migratory potential of the wood treating chemicals and the fertilizer constituents are quite distinct; (6) the only hazardous substance for which there was credible evidence suggesting that releases might have come from either Conoco or Agrico is lead; (7) no credible evidence adduced by Beazer or otherwise suggested that the presence of lead at the site would require remediation and thus affect the cost of past, present, or future remediation efforts; (8) Beazer had notice that lead and other fertilizer constituents were present on the Dent property since at least 1990, but had deliberately chosen not to investigate or initially to pursue its counterclaims based upon their known presence and had first sought in this action to plead that their presence would require remediation only on the day before scheduled trial of the CERCLA claims on October 17, 1993.

On the basis of these and other findings and related conclusions of law, the court entered judgment on January 3, 1996 in favor of Conoco and Agrico and against Beazer on all the CERCLA and state-law claims pending before the court. See Dent v. Beazer Materials & Servs., Inc., No. 2:89-2851-8 (D.S.C. Jan. 3, 1996).

7

On Beazer's counterclaim against Conoco and Agrico for past response costs, the court concluded that though Agrico and Conoco were potentially liable persons under § 107(a)(2) by virtue of their release of fertilizer chemical constituents on the Dent property, they had avoided imposition of joint and several liability by sufficiently proving that the fertilizer constituents had not and would not require CERCLA remediation. On this basis, the court concluded that Beazer was not entitled to recover any § 107 response costs from Conoco or Agrico but was itself solely liable for all such costs.

Alternatively, the court held that even if Conoco and Agrico were found to be jointly and severally liable for response costs by virtue of an "indivisible" contamination of the site, they should yet be equitably entitled to full contribution for those costs by Beazer under § 113(f)(1). On this basis, the court found in favor of Conoco and Agrico on their cross-claims and against Beazer on its counterclaim for contribution.

On the parties' cross-claims for declaratory judgment under § 113(g)(2), the court further declared Beazer liable, as the party solely responsible for site contamination, for all future response costs at the site. In so holding, the court specifically rejected Beazer's contention that allocation of liability for future remediation costs should await final EPA findings on the hazardous substances requiring remediation.

On the state-law indemnification cross-claims, the court entered judgment in favor of both Conoco and Agrico on the basis of the jury's findings that the litigation costs incurred by both parties in defending against Dent's claims were caused by Beazer's conduct.

This appeal followed. Beazer challenges on numerous grounds: (1) the district court's allocation to Beazer of 100% liability for past and future response costs; (2) the district court's discretionary refusal to grant Beazer's several post-submission motions to reopen the record to consider newly discovered evidence respecting the release of fertilizer constituents by Conoco and Agrico; (3) the district court's award of contractual indemnification to Conoco on its state-law claim; and (4) the court's award of equitable indemnification to Agrico on its state-law claim. We take these in order.

8

II.

We first consider Beazer's several challenges to that portion of the judgment which rejected its § 107 claims against Conoco and Agrico for past response costs.

Under CERCLA § 107(a), 42 U.S.C. § 9607(a), various persons connected in different ways with the release or threatened release of hazardous substances that cause "response costs" to be incurred by other governmental and natural persons are made"liable" to those other persons for the costs incurred. Subject only to four "innocent party" exceptions provided in § 107(b), this statutory liability is "strict"--imposed without regard to culpability or causation. See United States v. Monsanto, 858 F.2d 160, 167 (4th Cir. 1988), cert. denied, 490 U.S. 1106 (1989). Among the persons made liable under § 107(a) are the owners of property at the time of the "disposal" upon it of any hazardous substance. See 42 U.S.C. § 9607(a)(2). Where multiple persons are liable under § 107--either as past or present owners or otherwise--for response costs incurred with respect to a particular site, their liability is joint and several for the entire costs incurred unless a liable person can establish that the environmental harms reflected in the total costs incurred were fairly divisible between the liable persons. Monsanto, 858 F.2d at 171-72. In such cases, several liability may be apportioned between multiple liable persons by applying, in accordance with congressional intent, federal common law apportionment principles. See id. (drawing apportionment principles from § 433A of the Restatement (Second) of Torts).

Conceding, as it must on the undisputed facts, that it is a liable person by virtue of its long-term creosote disposal practices, Beazer sought by its § 107(a) counterclaims against Conoco and Agrico to impose upon those parties joint and several liability with Beazer for all of the response costs incurred in consequence of hazardous substance disposals on both properties comprising the Superfund site. Beazer's trial position, as finally alleged in its eve-of-trial amended counterclaim, was that Conoco and Agrico were liable persons not only with respect to the release of hazardous substances from their fertilizer operations on the Dent property, but also with respect to the

9

hazardous wood-treating substances released on the Koppers property that had found its way by subsurface migration onto the Dent property.[2]

The district court rejected Beazer's contention that Conoco and Agrico should be held jointly and severally liable with it for all past response costs incurred as a result of the release of hazardous substances on both properties comprising the Superfund site. The court first assumed that Conoco and Agrico were potentially liable persons by virtue of the release of fertilizer constituents on the Dent property during their respective periods of ownership of that property. But, applying relevant divisibility and apportionment principles, see Monsanto, 858 F.2d at 171, it then held that those parties should not be held jointly liable with Beazer for all response costs incurred in remediation of the site.

First, the court found that any harms to the site caused by wood-treating chemicals were sufficiently distinguishable by scientific testing procedures from any caused by fertilizer constituents to permit reasonable apportionment of related response costs and other damages between the persons respectively responsible for release of the two types. (JA 236-38 (order).) It then held that because no harm caused by wood-treating chemicals could be fairly attributed to Conoco and Agrico, they could only be severally liable, under property apportionment principles, for any harm and resulting response costs caused by fertilizer constituents for whose release they were responsible. (Id. at 235.) And, it then found that the only hazardous fertilizer substance

_____

[2] Beazer's specific legal theory for holding Conoco and Agrico liable as former owners of the Dent property for response costs related to Beazer's release of wood-treating chemicals on the adjoining Koppers property is not clear. In its brief, Beazer concedes at one point that subsurface migration of those wood-treating "organic" substances onto the Dent property would not constitute its "disposal" on that property. (Appellant's Br. 39 n.11.) That being conceded, Conoco and Agrico could not be liable persons as to those substances under § 107(a)(2), because they were not "person[s] who at the time of disposal . . . owned . . . any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (emphasis added). The precise theory now being urged by Beazer (and it has seemed to shift over time) is in any event irrelevant to the basis of the district court's disposition of the § 107(a) claim and to our review of that disposition.

10

identified on the site was lead, and that it was not present in sufficient quantities to require any remediation. (Id. at 235-36.) On the basis of these findings, the district court concluded that under relevant apportionment principles, all liability for response costs incurred at the site should be apportioned to Beazer and none to Conoco or Agrico. (Id.) The court accordingly entered judgment for Conoco and Agrico on Beazer's 107(a) counterclaims to recover response costs from those parties as persons jointly and severally liable with it.

Beazer challenges the rejection of its § 107(a) claim on several grounds. None has merit.**3**

As to the critical findings of fact underlying the rejection, each is either conceded by Beazer or is amply supported by the evidence and is not, therefore, clearly erroneous. Specifically, Beazer has conceded, as it must, that harms caused by wood-treating chemicals and those caused by fertilizer constituents were sufficiently divisible to permit apportionment of liability as between them. (See Appellant's Br. at 31, 36.) Its contention of error respecting the court's apportionment goes only to the failure to hold Conoco and Agrico liable for harm caused by the wood-treating constituents which it rightly, but irrelevantly, points out was indivisible. (See id.) The court did not err in this respect. It correctly ruled as a matter of law on the undisputed facts before it that no harm caused by wood-treating constituents could fairly be attributed to Conoco and Agrico. No wood-treating constituents were released by those parties during their prior ownerships of the Dent property and they could not be held to have released those constituents simply because, unbeknownst to them and beyond any means of their control, the substances were leaching onto their property from their release point on the Koppers property by subsurface migration. Strict liability could not, therefore, be imposed upon them for the release of those constituents under any of the relevant "liable person" provisions of § 107(a)(1)-(4). See United States v. Rohm & Haas Co., 2 F.3d 1265, 1280 (3d Cir. 1993) (recognizing

_____

**3** Several do not warrant discussion: that Conoco and Agrico, unlike Beazer, had refused cooperation with the EPA; that the EPA had indicated its belief that Conoco and Agrico should be liable by submitting to them information requests under § 104(e); and that § 113(f)(2) entitled Beazer to contribution as a party who had settled with the EPA.

11

that upon proof that a hazardous substance found on a site could not be "fairly attributable" to a party sued under§ 107(a), that party's properly "apportioned share would be zero"); United States v. Alcan Aluminum Corp., 964 F.2d 252, 270 (3d Cir. 1992) (holding that potentially liable party could avoid all liability by proving its released hazardous substances did not contribute to response costs); cf. Nurad, Inc. v. Williams E. Hooper & Sons Co., 966 F.2d 837, 845 (4th Cir.) (former property owner liable for leakage of hazardous substance into soil of own property notwithstanding participation merely passive), cert. denied, 506 U.S. 940 (1992).

Neither did the district court err in finding that the fertilizer constituents, for whose disposal Conoco and Agrico were potentially liable persons, had caused no harm requiring remediation. The only fertilizer-related hazardous substance identified in the evidence at trial was lead. There was credible evidence that it was in quantities too low to require CERCLA remediation; indeed, there was evidence that efforts to remove the quantities of lead involved would be environmentally counter-productive. (JA 579-81.)

Accordingly, we affirm the district court's rejection of Beazer's § 107(a) claims against Conoco and Agrico for incurred response costs.[4]

III.

Based upon its determination that Koppers/Beazer's releases of wood-treating chemical constituents "were the only cause of the harm inflicted on the environment at this site," (JA 235 (order)), the district court also held, on Conoco's and Agrico's § 113(g)(2) claim for declaratory judgment, that Beazer was liable for 100% of all future response costs incurred at the site. (Id. 238.)

_____

[4] The district court determined in the alternative that even if Conoco and Agrico were found jointly and severally liable with Beazer for all response costs, Beazer should yet be liable for all such costs based upon consideration of relevant equitable factors on the§ 113(f)(1) contribution claims of Conoco and Agrico. (JA 242-47.) In view of our affirmance of the judgment absolving those parties of any liability on Beazer's § 107(a) response costs claims, we need not address this alternative basis for the judgment in their favor.

12

Beazer challenges this imposition of liability for future response costs on two interrelated contentions: (1) that because administrative investigation to determine the full extent of required remediation at the site was still ongoing at conclusion of the CERCLA trial, the district court could not properly allocate liability between the parties on the basis of the evidence adduced at trial; and (2) the court then abused its discretion by denying Beazer's repeated post-trial motions to reopen the record to permit introduction of newly discovered evidence respecting the release of fertilizer constituents on the Dent property. We find no merit in either contention.

First, the court did not err in entering declaratory judgment as to future response costs on the basis of evidence adduced before completion of administrative proceedings.

Section 113(g)(2) provides that:

> In any . . . action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs on damages. A subsequent action or actions under Section [107] . . . for further response costs . . . may be maintained at any time during the response action . . . .

42 U.S.C. § 9613(g)(2) (emphasis added).

As this statutory language makes clear, under § 113(g)(2), "[t]he entry of declaratory judgment as to liability is mandatory." Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 844 (6th Cir. 1994). Compare 42 U.S.C. § 9613(g)(1) (an action for natural resource damages cannot be commenced "before [administrative] selection of the remedial action" where there is an ongoing "remedial investigation and feasibility study"), with id. § 9613(g)(2) (actions to recover response costs can be brought without regard to status of EPA site investigation).

Even if multiple response costs actions exist or might exist, the court in the first action to reach decision is required to enter judgment

13

as to liability for the site. The purpose of § 113(g)(2) is, in fact, to require that the court's judgment in the first action have a preclusive effect as to liability on all successive actions. See United States v. USX Corp., 68 F.3d 811, 819 n.17 (3d Cir. 1995) ("Essentially, § 113(g)(2) mandates collateral estoppel effect to a liability determination.").

The language of § 113(g)(2) is not internally inconsistent on the question of when liability should be determined. While § 113(g)(2) permits actions for "further response costs," such as to contest the amount of response costs, it does not permit a successive determination of liability. Id. If each action required a new liability determination, CERCLA's declaratory judgment provision would be meaningless. Section 113(g)(2) specifically provides for a "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action." As the Sixth Circuit said in Kelley, "[t]he fact that future costs are somewhat speculative is `no bar to a present declaration of liability.'" Kelley, 17 F.3d at 844 (quoting United States v. Fairchild Indus., Inc., 766 F. Supp. 405, 415 (D. Md. 1991)). Permitting prompt declaratory judgments encourages prompt remedial action. See O'Neil v. Picillo , 682 F. Supp. 706, 730 (D.R.I. 1988), aff'd, 883 F.2d 176 (1st Cir. 1989), cert. denied, 493 U.S. 1071 (1990).**5**

Second, the court did not abuse its discretion in refusing to reopen the record after trial on Beazer's several motions. A brief summary of relevant procedural history shows why.

As the district court correctly noted (JA 257), Beazer was on notice of the presence of lead on the Dent property as far back as early 1990. Nevertheless, it did not assert lead contamination as a basis for recovery of response costs by cross-claims against Conoco and Agrico as

_____

**5** Even if the district court were not bound to enter judgment immediately, it did not abuse its discretion in doing so here. At the time trial of the CERCLA claims commenced, the case had been pending for four years with no request for continuance or stay by Beazer. And, indicating its assumption at the time, Beazer had also made claims for declaratory judgment, presumably on the evidence to be adduced at a trial which it did not timely move either to continue or to stay.

14

co-defendants at any time before those parties in September, 1992 filed § 107(a) and § 113 cross-claims against Beazer. And, it did not even then assert it as a counterclaim (though it was a compulsory one) against those parties. Instead, deliberately declining at that time to assert any claims against those co-defendants in this action, Beazer first sought to raise CERCLA claims against them and other parties in a separate CERCLA action, Beazer East, Inc. v. United States Navy, 2-93-1677-8 (D.S.C. July 9, 1993), in July, 1993, three and a half years after this action was commenced by Dent and ten months after Conoco and Agrico had served § 107(a) and § 113 cross-claims against Beazer. Beazer then unsuccessfully sought to have its separately filed CERCLA action consolidated with this action. Following denial of Beazer's consolidation motion, Conoco and Agrico agreed to allow Beazer belatedly to assert compulsory CERCLA counterclaims against them in this action. Beazer did so on August 27, 1993, asserting CERCLA claims for response costs under § 107(a) and for contribution and declaratory judgment under § 113. These claims, as then pleaded, did not mention lead as a cause of response costs, but claimed joint and several liability and sought contribution only on the basis of contamination of the site by wood-treating constituents. It was only on Sunday, October 17, 1993, the day before the CERCLA trial was scheduled to start, that Beazer for the first time asserted in pleadings amended (by consent of Conoco and Agrico in order to avoid delay) that Conoco and Agrico were liable to Beazer for response costs caused by lead contamination of the site. As indicated, Beazer then went to trial on its cross-claims as pleaded, and did not request any continuance or stay of trial to permit further discovery or investigation by it, or to permit further investigative procedures by the government agencies. But, as also indicated, once the case had been submitted for decision, Beazer then made repeated efforts to have the case reopened for consideration of allegedly newly-discovered evidence, both as to the quantities of lead on the site and eventually as to the presence of other "newly discovered" fertilizer constituents.

The district court did not abuse its discretion in refusing to reopen in response to these efforts. Beginning with its eve-of-trial motion to amend to allege lead contamination for the first time in four years of pre-trial proceedings, Beazer's efforts to expand the record and alter the dimensions of the case as then established invited growing incredulity, and occasionally rebuke, by the district court. The last-minute

15

motion to amend on trial's eve was based on Beazer's assertion that it "learned of the presence of non-wood treating constituents on the Dent property" only after filing its August 27, 1993, counterclaim which did not allege the presence of any fertilizer constituents. Following a hearing on the motion, the district court found the assertion of new discovery untrue and sanctionable. (JA 257-58.) Specifically, the court found that Beazer had known of lead's presence on the site as far back as early 1990. (Id. at 257.) Nevertheless, the court, with the consent of Conoco and Agrico, permitted the amendment to introduce this new and potentially important issue regarding the joint liability of Conoco and Agrico with Beazer for site contamination.

Once in trial, testimonial and documentary evidence was presented on the question whether the presence of lead and other fertilizer constituents would require site remediation. Notwithstanding the abundant opportunity had by Beazer to address and counter unfavorable evidence on this issue during trial, it continued in the post-trial period to seek relitigation of the issue on a re-opened record. Its theories for re-opening continued to shift over the period.

On October 12, 1994, in its first post-trial motion to re-open the record, Beazer claimed to have "newly discovered evidence" of "additional" potential fertilizer constituents other than lead (e.g., fluorine), even though the presence of these fluorine constituents was already known. On January 13, 1995, Beazer filed an "offer of proof" and requested a hearing because a January 11, 1995 EPA letter had identified lead and arsenic at the site, though not the "additional" (fluorine) fertilizer constituents that were the basis for the earlier motion. After the court denied Beazer's motion to reopen, Beazer then filed a motion to reconsider on January 25, 1995. That motion relied upon a January 1995 EPA fact sheet relating to lead and arsenic but again not any "additional" fertilizer constituents. Despite the fact that the January 25, 1995 motion to reconsider was untimely, the court conducted three hearings on the matter during which Beazer's position continued to shift. At one point in the proceedings, Beazer asserted that if the record were reopened it would not attempt to introduce "any new evidence about lead," but declined to identify which hazardous substance or data it would rely upon in the proceedings or that it would in fact rely upon any new evidence at all. After the court denied this motion to reconsider on May 2, 1995, Beazer on November 27, 1995 filed yet

another motion to supplement the record with an EPA finding regarding lead and arsenic (but not the additional fertilizer constituents). That motion was denied in the court's final order.

When this conduct of Beazer's in the trial and post-trial stages of this litigation is considered in conjunction with its litigation conduct in the protracted pre-trial stage, it is abundantly clear that the court did not abuse its discretion in declining to reopen the case post-trial.

IV.

Challenging the entry of judgment in favor of Conoco on Conoco's contractual indemnification claim, Beazer contends that the district court erred as a matter of law in ruling pre-trial that the indemnification provision in the 4-acre lease bound Beazer to indemnify Conoco for the latter's litigation costs in defending against Dent's CERCLA claims. The contention is two-fold. First, that because it is undisputed that Beazer made no use of the leased parcel that involved the disposal of wood-treating constituents, Dent's claim against Conoco for response costs related to the parcel did not arise out of Beazer's use of the parcel. Second, that the indemnification provision does not, in any event, apply to CERCLA claims. We disagree on both points and find no error in the judgment in favor of Conoco on this claim.

The indemnification provision at issue provides, in critical part, that "[Beazer] agrees to save [Conoco] harmless from any and every claim arising out of the use by [Beazer] of the demised premises . . . ." (JA 222.)

Beazer's contention that this contractual obligation only applies to claims that involved Beazer's harm-causing use of the leased parcel misinterprets the obligation. As the district court properly held, the obligation is not to save Conoco harmless only from meritorious claims arising from Beazer's use of the parcel but to save Conoco harmless from "<u>any and every claim</u> arising out of [Beazer's] use." (JA 219.) That left only the question whether Dent's claim against Conoco for response costs did in fact arise out of Beazer's use-- whether or not the claim was mistaken (as concededly it was) as to the use actually made. That very question was submitted to the jury which found by special verdict that Dent joined Conoco as a party-

17

defendant only because of Beazer's use of the leased parcel. The district court did not err in this aspect of its ruling on the indemnification provisions coverage.

Neither did the court err in interpreting the indemnification provision to cover the CERCLA claim at issue. Beazer relies on the Third Circuit's holding in Beazer East, Inc. v. Mead Corp., 34 F.3d 206, 211 (3d Cir. 1994), cert. denied, 514, U.S. 1065 (1995), that whether a pre-CERCLA indemnification provision was intended to cover CERCLA claim depends upon whether it is "either specific enough to include CERCLA liability or general enough to include any and all environmental liability." The provision at issue here, Beazer contends, fits neither. We disagree. As the district court held, accepting the Mead Corp. prescription, the provision here which covers "any and every claim" could not be more general. It therefore sufficed to cover the CERCLA claim here at issue. See Joslyn Mfg. Co. v. Koppers Co., Inc., 40 F.3d 750, 754-55 (5th Cir. 1994) (so construing indemnity clause covering "any and all claims . . . arising from . . . the occupancy or use of [the] premises").

The district court did not err in entering judgment for Conoco on its contractual indemnification claim.

V.

Beazer challenges on two grounds the court's entry of judgment against it and in favor of Agrico on Agrico's equitable indemnification claim. First, Beazer contends that under controlling South Carolina law, equitable indemnification lies only between parties having a contractual or special relationship that did not exist between Beazer and Agrico. Second, Beazer contends that equitable indemnity does not lie in favor of a party that itself is at fault in causing the injury for which indemnification is sought and that here Agrico was so at fault. We disagree on both points and find no error in this part of the court's judgment.

Judgment was entered only for litigation costs incurred by Agrico in defending against Dent's state-law claims of negligence, fraud, etc. in failing to apprise Dent of the presence of wood-treating constitu-

18

ents when Dent purchased the property from Agrico.**6** Under South Carolina law, as generally, the right to equitable indemnification for incurring such costs does not depend upon the existence of any contractual or other special relation between indemnitor and indemnitee. Entitlement to equitable indemnification arises simply out of the necessity to defend a claim based upon the wrongful conduct-- contractual or tortious--of a third party. It does not depend on there having been any contractual or other special relationship between the wrongdoer and the person forced to defend against the claim. See Town of Winnsboro v. Wiedeman-Singleton, 414 S.E.2d 118, 121 (S.C. 1992) (holding that "recovery is allowed when as a result of defendant's breach of contract or tortious activity the plaintiff is required to either defend itself or bring an action against a third party"); Stuck v. Pioneer Logging Mach., Inc. , 301 S.E.2d 552, 553 (S.C. 1982) (holding that equitable indemnity lies "where one person is exposed to liability by the wrongful act of another in which he does not join").

Here, the jury, answering an interrogatory put to it by agreement of the parties, found that Agrico was sued by Dent solely as a result of Beazer's conduct in contaminating the Dent property and not because of Agrico's conduct vis-a-vis Dent. This fact, rather than any special relationship between Agrico and Beazer, sufficed to invoke equitable indemnification principles in Agrico's behalf.

Nor is entitlement to equitable indemnification defeated here by any fault on Agrico's part in bringing about the injury for which it sought indemnification from Beazer. Freedom from such contributing fault is, as Beazer contends, a requirement for equitable indemnification. See Stuck, 301 S.E.2d at 553. But, here, given the jury's finding, Agrico cannot be charged with any fault in causing incurrence of the litigation costs of defending against Dent's state-law claims which is the injury for which Agrico sought indemnification.

_____

**6** Because Agrico did not seek, and the district court did not award, indemnification for Agrico's defense against Dent's CERCLA claims, Beazer's further contention that indemnification does not lie against a person who settles a CERCLA claim is irrelevant.

19

The district court did not err, therefore, in giving judgment in favor of Agrico on its equitable indemnification claim.

VI.

Having found no reversible error among those assigned by Beazer, we affirm the judgment of the district court.

<u>AFFIRMED</u>

20