# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3679

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Findett Corporation, | * | Appeal from the United States |
| | * | District Court for the |
| Appellant, | * | Eastern District of Missouri. |
| | * | |
| ACF Industries, Inc.; General Motors | * | |
| Corporation; The Goodyear Tire and | * | |
| Rubber Company; Mallinckrodt | * | |
| Chemical, Inc.; Cadmus Corporation; | * | |
| Milton Tegethoff, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: April 10, 2000
Filed: August 3, 2000

_____

Before BOWMAN and HANSEN, Circuit Judges, and CARMAN,[1] Judge.

_____

BOWMAN, Circuit Judge.

---

[1]The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

Findett Corporation appeals from the orders of the District Court[2] granting summary judgment to the United States on the government's claim for recovery of response costs under CERCLA.[3]  We affirm.

I.

Beginning in 1962, Findett recycled chemicals at the location known as the Findett/Hayford Bridge Road Site in St. Charles, Missouri.  As a result of the release of untreated waste, the groundwater and soil at the site became contaminated with polychlorinated biphenyls (PCBs) and volatile organic compounds (VOCs). Following an investigation of the site, the United States Environmental Protection Agency (EPA) on December 28, 1988, issued a Record of Decision (ROD), including a remedial plan to clean up the site.  See Dico, Inc. v. Diamond, 35 F.3d 348, 349 n.1 (8th Cir. 1994) (noting that much of the authority Congress granted to the President in CERCLA has been delegated to the EPA administrator).

In March 1990, the United States filed suit against Findett seeking to have Findett held responsible for response and remediation actions at the site.  In May 1990, the District Court entered a consent decree in which Findett agreed to implement the remediation plan set forth in the 1988 ROD (as amended).  The consent decree made it clear that Findett was not admitting, and the court was not finding, liability on the part of Findett for the matters raised in the lawsuit.  Further, the government reserved the right to seek to recover additional costs incurred or to be incurred by the EPA in

---

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[3]The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 (1994 & Supp. III 1997) (as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613).

connection with the remediation of the Findett site. During the early part of the 1990s, treatment of the soil and groundwater began.

In October 1996, Findett and the government signed an agreement to toll the statute of limitations from and including October 21, 1996, through October 21, 1997, on any 42 U.S.C. § 9607 cost recovery action to be filed by the EPA against Findett. It has been represented to this Court that the purpose of the tolling agreement was to facilitate settlement negotiations. In July 1997, such negotiations evidently having failed, the United States filed suit against Findett (and a number of other defendants), seeking to recover past and future response and enforcement costs related to remediation of the Findett site. All of the defendants except Findett have settled with the government.

The United States filed two motions about a month apart for partial summary judgment against Findett: the first for judgment on liability and the second for judgment on response costs. Findett also sought summary judgment on response costs. In September 1999, the District Court granted both of the government's motions and denied Findett's motion. See United States v. Findett Corp., 75 F. Supp. 2d 982 (E.D. Mo. 1999). Findett timely appeals. We review de novo and will affirm if we conclude there are no genuine issues of material fact and the government is entitled to judgment as a matter of law. See United States v. Dico, Inc., 136 F.3d 572, 578 (8th Cir. 1998).

II.

We begin with Findett's challenges to the court's decision to grant summary judgment on liability. Findett believes that the EPA's 1997 suit is time-barred and argues here that, in any event, genuine issues of material fact remain to be resolved before it can be determined whether the suit was timely filed. The answer to the statute of limitations question depends in the first instance upon whether this case is properly characterized, within the meaning of CERCLA, as an "initial" or a "subsequent" cost

recovery action. If this is an initial action, as Findett maintains, then the government was required to bring suit "within 6 years after initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B) (1994). According to Findett, "construction" was begun before October 22, 1990, so the tolling agreement never took effect and this initial action of the government is time-barred. If the government is correct, however, and this second suit is a "subsequent action . . . for further response costs," then the action was required to "be commenced no later than 3 years after the date of completion of all response action." Id. § 9613(g)(2). As response activity was ongoing when the government filed its complaint, the action clearly would be timely.

## A.

Findett contends that this cannot be a subsequent action because the government's 1990 action, which terminated with the consent order, was not an initial action within the meaning of CERCLA. Findett relies on this language from § 9613(g)(2) (emphasis added): "In any such [initial] action . . . , the court *shall enter a declaratory judgment on liability* for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." Findett argues that, because the District Court did not enter a declaratory judgment on Findett's liability for response costs in the consent order – and, indeed, specifically disavowed any intent to do so – this succeeding action cannot be subsequent (within the meaning of CERCLA) to the 1990 action. Reading the emphasized phrase in isolation, that is a plausible argument. But in interpreting this statutory language as it applies to the statute of limitations question, we have considered CERCLA's goal of expediting remediation of hazardous waste sites and the concern for avoiding unnecessary litigation that is inherent in the policy favoring consent decrees. Having done so, and also calling on common sense, we conclude that Congress did not intend that the "declaratory judgment" language be used to *define* an initial action for purposes of determining whether a later action against the same party and pertaining to the same site is subsequent for CERCLA statute of limitations purposes, when the later action

-4-

is filed after resolution by consent decree of the earlier action. Thus, as a matter of law, this case is a subsequent action.[4]

The 1990 suit clearly was an "action" and was filed to determine responsibility for remediation at the Findett site. The government plainly asserted that claim, but the issue was not litigated because it was not necessary to do so. The consent order was entered, as stated in the decree itself, to "expedite remediation of the Site and avoid prolonged and complicated litigation between the Parties." Consent Decree at 3. As a practical matter, Findett elected in 1990 to reserve its right to contest future liability for response costs at the Findett site (understandably so, where that decision apparently was not a deal-breaker). The EPA went along, and the District Court, for its part, chose to approve the consent decree notwithstanding Findett's disavowal of liability. This course of events resulted in a "swift and effective" initial response to the hazardous waste problem at the site, one of the key missions of CERCLA. United States v. Mexico Feed & Seed Co., 980 F.2d 478, 486 (8th Cir. 1992). Findett is not asserting that the 1990 action resolved its responsibility for all response costs, nor could it successfully do so. Neither is Findett disavowing the settlement agreement entered into in that case. From at least the time the consent order was entered, Findett was on notice that the government would likely be seeking to recover additional response costs from the company. The omission of a declaration of liability with respect to Findett does not make the first suit any less an action for statute of limitations purposes.

---

[4]Besides claiming genuine issues of material fact for trial on this issue (and we see none), Findett suggests that this question of statutory interpretation – is this action initial or subsequent? – raises "disputed legal issues . . . which make[s] entry of judgment on the issue of liability inappropriate." Brief of Findett at 2. On the contrary, claims where there are only legal issues to resolve are precisely the sort of claims that Federal Rule of Civil Procedure 56 was designed to expedite. See, e.g., Union Pac. R.R. v. Reilly Indus., 215 F.3d 830, ___ (8th Cir. 2000) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.").

It would hinder Congress's objective of providing for the prompt initiation of remediation of hazardous waste sites and defeat the goal of ensuring that responsible parties pay for cleanup, see id., if the EPA were to be required to forfeit a future claim for response costs as the result of a time-bar because it opted to settle a case – and expedite the start of cleanup – while agreeing to forgo a declaration of liability, perhaps even making prolonged litigation unnecessary altogether if a later case could be settled. "It is important to everyone that necessary environmental remediation be timely completed as cost effectively as possible." Minnesota v. Kalman W. Abrams Metals, Inc., 155 F.3d 1019, 1026 (8th Cir. 1998). Obviously, it was a better use of Findett's resources at the time of settlement to put those resources to work on cleaning up the site rather than to spend them on litigating liability. Cf. Findett Corp., 75 F. Supp. 2d at 993 (noting Findett's claim, having spent some time litigating liability for response costs sought in the 1997 suit, that it was unable to pay much more than $600,000 of the $3 million-plus judgment assessed against it). We hold that the 1990 suit was an initial action within the meaning of § 9613(g)(2)(B), notwithstanding the absence in the consent order of a declaration of Findett's liability.

In so holding, we adopt the reasoning of our sister circuit in United States v. Navistar International Transportation Corp., 152 F.3d 702 (7th Cir. 1998). In Navistar, the Seventh Circuit noted that the provision concerning a declaratory judgment of liability in an initial CERCLA action was included to promote efficiency and economy in the judicial system, "to avoid the necessity of *relitigating* liability questions." 152 F.3d at 709 (emphasis added). But as in Navistar, the goal of conserving judicial resources is not thwarted here by declaring this a subsequent action because liability was never *litigated* in the first instance. The fact that liability in the first case was neither admitted by Findett nor determined by the District Court simply means the issue was left open, to be litigated in any later action. That scenario also left open the possibility that liability would not have to be litigated *at all*, if the parties had been able to reach a settlement.

-6-

Findett contends that "three other federal Courts of Appeals have examined the plain language of § 9607(g)(2) [sic] and have concluded that it expressly requires the entry of a declaratory judgment regarding liability in any 'initial' action to recover response costs." Brief of Findett at 6. Although all three of the cases cited quote and discuss the § 9613(g)(2) language concerning the entry of "a declaratory judgment on liability" in an initial action, the legal challenges that precipitated the discussions were directed to the lower courts' decisions to grant declaratory relief and were unrelated to CERCLA's statute of limitations.

In Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 844-45 (6th Cir. 1994), the defendants challenged the court's entry of declaratory relief for future cleanup costs. The "declaratory judgment" language in § 9613(g)(2) was cited for the proposition that Congress properly decided that liability for ongoing costs should be handled with an early declaration of liability, presumably to avoid the necessity of litigating liability as each cost is incurred. The court never considered the question of whether an action would be deemed initial within the meaning of CERCLA for statute of limitations purposes in the absence of a declaratory judgment on liability in a prior action relating to the same site. In United States v. USX Corp., 68 F.3d 811, 819 (3d Cir. 1995), as in Kelley, the defendant challenged a declaratory judgment on future response costs in an action where the applicable statute of limitations was not at issue. Likewise, in Dent v. Beazer Materials & Services, Inc., 156 F.3d 523, 531-32 (4th Cir. 1998), the issue was whether the court had sufficient information to enter a declaratory judgment regarding liability. The Dent court made no attempt to distinguish between initial and subsequent actions for purposes of applying the statute of limitations. None of these cases in context provides persuasive authority for the question before us.

It is clear that the government's 1990 suit properly asserted a legal claim against Findett, and the voluntary resolution of that claim without a declaration of liability renders the suit no less an initial action than one with such a declaration. Cf. Navistar, 152 F.3d at 710 (holding government's action was not subsequent where government

"never previously asserted any claim against" Navistar, but only against other defendants). The government's 1990 action was an initial action within the meaning of § 9613, and therefore this 1997 action is a subsequent action, and a timely filed subsequent action, at that.

B.

Even if the EPA's suit here were properly characterized as an initial action, we nevertheless would hold that it was timely filed. As mentioned above, in the case of an initial action, the government must file suit "within 6 years after initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). Findett argues that there remain genuine issues of fact regarding the start date of construction at the site, contending that physical construction began before October 22, 1990. According to Findett, "the statute of limitations would have already run before October 21, 1996, and the tolling agreement would be ineffective to extend it." Brief of Findett at 4. Assuming without deciding that Findett is correct about the failure of the tolling agreement, Findett's argument nevertheless fails because construction did not begin before October 22, 1990.

According to Findett, the remaining fact issues relate to three actions undertaken at the Findett site prior to October 22, 1990, and whether those activities constituted the "initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). Upon de novo review, we conclude that the actions Findett has identified – visits to the site and the taking of soil and water samples, engineering surveys, and the determination of the size and location of the support pad for an air stripper – cannot, as a matter of law, be characterized as physical on-site construction. See Brief of Findett at 13 (identifying the "three activities"). All of the actions taken before October 22, 1990, were preliminary to the start of construction and related to testing, monitoring, or design of the remedy. Giving the term "construction" its ordinary meaning, and CERCLA gives us no reason to do otherwise, a physical

presence at the site for purposes of sampling, surveying, evaluation, and measuring is not, as a matter of law, "initiation of physical on-site construction of the remedial action." While some of the enumerated actions arguably were preparatory to remedial activity, there simply was no "construction" initiated by that planning and design work. Therefore, even if the present action is an initial action within the meaning of CERCLA, it was timely filed within seven years (six years plus the one-year extension pursuant to the tolling agreement) after the initiation of actual construction.

C.

In sum, there are no genuine issues of material fact on the question of whether this action is time-barred. "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." Badaracco v. Commissioner, 464 U.S. 386, 391 (1984) (quoting E.I. du Pont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)). In these circumstances and on these facts, and given the Supreme Court's admonition in Badaracco regarding the construction of a statute of limitations in a case such as this, we do not hesitate to hold that the government's action was timely filed.[5]

---

[5]Findett complains to this Court that it was unable to provide citations to the record in its response to the EPA's motion for partial summary judgment on liability, a point noted by the District Court in its discussion, because the government completed some of the witness depositions mere days before Findett's response to the government's summary judgment motion was due to be filed. Findett claims that "granting summary judgment on this basis . . . constitutes an abuse of discretion." Brief of Findett at 11. We disagree. It was Findett's responsibility under Federal Rule of Civil Procedure 56(e) to "set forth specific facts showing that there is a genuine issue for trial." As the District Court noted, Findett did not ask for additional time to file a response, nor did it move the court to supplement its response. The court is under no obligation to accept factual contentions of the party opposing summary judgment that are not supported by citation to the record, merely based on that party's assurance that there is record support, and thus it is not "an abuse of discretion" if the summary

III.

The District Court awarded the United States over $3.2 million pursuant to the government's motion for partial summary judgment on response costs.[6] Findett challenges the court's conclusion that there were no genuine issues of material fact as to whether all the response costs the government claims were sufficiently documented. According to Findett, the EPA failed to substantiate some of its claimed response costs, in particular the historic redistribution and annual allocation costs. We have reviewed the record de novo, directing particular attention to the testimony that Findett identifies to support its argument, and we conclude otherwise.

The EPA submitted thoroughly detailed cost summaries, supporting data, and other competent evidence to support its claim for recovery of response costs. Findett's expert Dale Jensen in his report suggested that additional documentation the EPA had not submitted was necessary to substantiate the EPA's response costs. We disagree. Either the missing documentation noted in Jensen's report was in fact provided by the EPA to Findett, or the detail sought (for example, progress reports from contractors, audit reports of contracts) was only peripherally related to whether the EPA actually incurred response costs. Findett has not attempted to explain to us how those documents would have been used to challenge the otherwise substantial proof that the EPA incurred the costs at issue. As for the historic redistribution and annual allocation costs, whereby the EPA apportions past and present overhead costs among cost recovery defendants, we conclude that those costs are sufficiently documented (and the

judgment court declines to do so.

[6]The District Court in its opinion said that "Findett has failed to raise a dispute of material fact as to whether the government is entitled to the $3,293,909 that it incurred in response actions at the Findett Site." Findett Corp., 75 F. Supp. 2d at 993. A separate judgment, entered on the same date but not published with the opinion, actually awarded judgment in the amount of $3,285,384.

documentation itself, except for its sufficiency, is unchallenged) to afford the government judgment as a matter of law on those costs as well. In sum, Jensen's opinions regarding insufficient documentation do not create any genuine issue of material fact as to the costs the government seeks to recover from Findett.

In its challenge to the sufficiency of the EPA's cost documentation, Findett also makes a thinly articulated argument that the costs claimed are inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan (NCP). See 42 U.S.C. § 9605; 40 C.F.R. pt. 300 (1999).[7] Under CERCLA, Findett had the burden to show inconsistency with the NCP or, in this case, because the response cost issue was decided on a motion for summary judgment, a genuine issue on inconsistency. Cf. Kalman W. Abrams Metals, Inc., 155 F.3d at 1025 ("[T]he State may recover all costs except those that appellees prove were inconsistent with the NCP."). Findett does not challenge the appropriateness of the response and remediation actions taken by the EPA or by others at the EPA's behest, or argue that such actions were inconsistent with the NCP. See United States v. Hardage, 982 F.2d 1436, 1443 (10th Cir. 1992) ("Only response actions---i.e., removal or remedial actions---can be inconsistent with the NCP, which can be demonstrated by a showing that the government's choice of response action was arbitrary and capricious."), cert. denied, 510 U.S. 913 (1993). And upon de novo review, we conclude that Findett has not demonstrated a genuine issue of material fact on any question concerning the sufficiency of the evidence on the issue of consistency with the NCP. Findett's assertion that the government's documentation is not in compliance with internal EPA guidelines (assuming that allegation is factually

---

[7]"The purpose of the National Oil and Hazardous Substances Pollution Contingency Plan (NCP) is to provide the organizational structure and procedures for preparing for and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants." 40 C.F.R. § 300.1. "The NCP regulates *choice of response actions*, not costs. Costs, by themselves, cannot be inconsistent with the NCP." United States v. Hardage, 982 F.2d 1436, 1443 (10th Cir. 1992) (citations omitted), cert. denied, 510 U.S. 913 (1993).

correct) is not relevant to the question of whether summary judgment on response costs was appropriate. Findett has not shown how the EPA's purported failure to comply with its own rules is of consequence to the response actions' consistency with the NCP. The internal policies in question are not incorporated into the NCP and, absent a showing that failure to comply with those internal rules somehow resulted in expenditures for actions that were inconsistent with the NCP, Findett's claim must fail.

We hold that the District Court properly granted the government's motion and properly denied Findett's motion for summary judgment on response costs.

III.

The judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.