**UNITED STATES of America,**
**Plaintiff,**

v.

**William M. GURLEY, Defendant,**

**and**

**The State of Arkansas, Intervener.**

**No. 3:00 CV 077 SMR.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

March 2, 2004.

Charles L. Moulton, Esq., Julie Camille Williams, Esq., Arkansas Attorney General's Office, Little Rock, AR, for intervenor.

James E. Foster, Esq., Akerman, Senterfitt & Eidson, Orlando, FL, for trustee.

Lois J. Schiffer, Esq., Richard Gladstein, Esq., U.S. Department of Justice, Environmental Enforcement Section, Jeffrey Prieto, Esq., U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for plaintiff.

Elton A. Rieves IV, Esq., Kent J. Rubens, Esq., Rieves, Rubens & Mayton, West Memphis, AR, Robert L. Young, Esq., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., CNL Center at City Commons, Orlando, FL, James W. Gentry Jr., Esq., Spears, Moore, Rebman & Williams, Chattanooga, TN, for defendant.

## MEMORANDUM OPINION

STEPHEN M. REASONER, District Judge.

This Court conducted a hearing on Plaintiff's right to reimbursement of response costs incurred or to be incurred at the Gurley Pit Site and South 8th Street Superfund Sites located in northeast Arkansas. The Court finds the United States is entitled to response cost at the

Gurley Pit Site in the amount of $13,986,-191.94[1], plus interest from July 24, 2002 until the date of judgment, plus post judgment interest at the rate of 1.23% until paid. The Court also finds the United States is entitled to response costs at the South 8th Street Site in the amount of $6,979,055.18[2] plus interest from July 24, 2002 until the date of judgment, plus post judgment interest at the rate of 1.23% until paid, plus a declaratory judgment for all future response costs at the South 8th Street Site. The State of Arkansas is entitled to a declaratory judgment for all future response costs incurred by the State at the South 8th Street Site.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY:

This case has a long and tumultuous history, a brief review of which is required for a thorough understanding of these proceedings. In November, 1987, the United States brought an action under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, against Defendant, William M. Gurley, and others to recover all of its response costs in cleaning up the Gurley Pit Site located in northeast Arkansas. That action was assigned to the Honorable George Howard, Jr. Section 107(a) of CERCLA authorizes the United States or a state to recover from liable parties "all costs of removal or remedial action incurred by the United States ... not inconsistent with the national contingency plan ('NCP')." 42 U.S.C. § 9607(a). On July 14, 1990, Judge Howard issued a Memorandum and Opinion granting the Motion for Summary Judgment filed by the United States as to liability against Mr. Gurley at the Gurley Pit Site (also referred to occasionally in the record as the "Edmondson Pit Site"). *United States v. Gurley Ref. Co., et al.,* No. 3:86CV291, slip op. (E.D. Ark. June 14, 1990). Two years later, Judge Howard issued an Order holding Mr. Gurley and related entitles liable for $1,786,502.00 representing the costs incurred by the United States through February 28, 1990, as well as a declaratory judgment for future response costs at the Gurley Pit Site. *United States v. Gurley Ref. Co.,* 788 F.Supp. 1473 (E.D.Ark.1992). In 1994, the Eighth Circuit affirmed the judgment as to Mr. Gurley. *United States v. Gurley,* 43 F.3d 1188 (8th Cir.1994), *cert. denied,* 516 U.S. 817, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995).

In July, 1995, Mr. Gurley filed for bankruptcy in the Middle District of Florida. On April 24, 1996, the United States filed a Proof of Claim in the bankruptcy court against Mr. Gurley for the response costs at the Gurley Pit Site and at another site, the South 8th Street Superfund Site

---

[1]. This figure includes principal on costs incurred from March 1, 1990 through June 30, 2001, and interest on those costs from September 10, 1990 through July 24, 2002 at the Gurley Pit Site. It also includes a reduction of $10,659.00 in ATSDR costs, plus interest, because the United States withdrew this claim. The amount also includes a reduction of $1,089,260.44 resulting from several payments by other parties made toward the costs incurred at the Site. The figure does not include $1,377,492.00 which remains outstanding from the judgment awarded by the Honorable George Howard, Jr. in 1992, related to costs incurred prior to February 28, 1990.

[2]. This figure includes principal on costs incurred through June 30, 2001, and interest on those costs from April 24, 1996, through July 24, 2002. It also includes a reduction of $125,162.00 in ATSDR costs, plus interest, because the United States withdrew this claim. The figure also includes a $1,306,000.00 reduction for amounts paid by other parties related to the South 8th Street Site. The figure also includes a deduction, $1,704.30, for proportionate costs incurred prior to the enactment of CERCLA.

("South 8th Street Site"). After a trial in September, 1997, the bankruptcy court denied Mr. Gurley's discharge, held that Mr. Gurley had concealed substantial assets in an effort to avoid the CERCLA judgment against him, and entered a judgment against Mrs. Gurley determining that the concealed assets were property of the bankruptcy estate.[3] *United States v. William M. Gurley*, No. 95–0293, Bankr.M.D. Fla. (J. and Mem. Op., Aug. 15, 1997); *United States v. William M. Gurley*, No. 95–0293, Bankr.M.D. Fla. (Am. J., Sept.16, 1997). That judgment was affirmed by the Eleventh Circuit Court of Appeals. *Betty Jean Gurley v. George E. Mills, Jr., Trustee*, No. 99–13416 slip op., 2000 WL 1480453 (11th Cir. Sept. 20, 2000)(per curiam).

On March 23, 1998, the United States filed an Amended Proof of Claim in the bankruptcy action. Mr. Gurley then filed a Motion to Withdraw the Reference which was granted by the United States District Court for the Middle District of Florida. On February 25, 2000, the Florida District Court transferred the claims of the United States to this Court. The State of Arkansas intervened filing a claim for Declaratory Judgment alleging that Mr. Gurley is liable for any response costs incurred by the Arkansas Department of Environmental Quality ("ADEQ").

## II. CURRENT LITIGATION:

The United States filed Motions for Summary Judgment in this action as to the Gurley Pit Site based on the Declaratory Judgment in the former Gurley action be-

fore Judge Howard. The United States also filed a Motion for Summary Judgment as to the South 8th Street Site for all response costs incurred and to be incurred in the future. This Court conducted a hearing on the motions and issued an Order dated September 27, 2001, granting the Motions for Summary Judgment in all respects, except as to the factual issue of whether the response costs were inconsistent with the NCP.[4] This Court then conducted a court trial on the amount of the response costs in the action. At the conclusion of the trial, the Court directed the parties to file post-trial briefs. The only issues before the Court at this time are 1) the admissibility of payroll cost exhibits; 2) whether the response cost incurred in this action are inconsistent with the NCP; and 3) joint and several liability at the South 8th Street Site.

## III. ADMISSIBILITY OF PAYROLL COST EXHIBITS:

During the trial on costs, the Court admitted the summary exhibits[5] offered by the government but excluded admission of payroll costs in the summary where the payroll information did not reveal the underlying salary and wage rate. The United States filed a Brief in Support of Motion for Admission (Doc. No. 93) of the payroll costs during the last days of the hearing. Mr. Gurley filed his response (Doc. No. 95) and the United States replied (Doc. No. 96). From the pleadings, the Court finds the payroll costs listed in the summaries are admissible. The payroll reports generated from the Environ-

---

3. The United States notes that the bankruptcy estate now holds more than $23 million for the benefit of creditors. The United States claims it is Mr. Gurley's primary creditor.

4. The Court also reserved the issue of whether Mr. Gurley was an owner or operator of the South 8th Street Site, but after a hearing conducted on December 3 and 7, 2001, decid-

ed the issue against Mr. Gurley, finding him to be an owner or operator. (See Tr. Evid. Hrg., Vol. 2, Dec. 7, 2001).

5. On July 26, 2002, the Court clarified that all of the summaries admitted at the April, 2002, hearing remained admitted (i.e. Exhibits 1, 2, 3, 4, 6, 7, 8, 10, 12, 14, 19, 20, 22, 23, 25, 26, 27, 28, 29).

mental Protection Agency ("EPA") Integrated Financial Management System ("IFMS") show the amounts paid and the hours worked per pay period for each EPA regional and headquarters employee who worked on the Gurley Pit Site and South 8th Street Sites.[6] The computer printouts detailing payroll costs incurred are admissible pursuant to FRE 1006 since there is sufficient supporting underlying data and the government established that the printouts accurately reflected the data stored in the IFMS computerized central accounting system. EPA Region 6 accountant Dennis McBride, EPA headquarters accountant Charles Young, and the Plaintiff's expert certified public accountant, Wiley Wright, all testified at length as to the integrity, accuracy, and reliability of the EPA computer systems and printouts. In addition, Mr. Wright testified that he tested whether the payroll computer printouts contained in Government's Exhibits 2 and 3 accurately reflected the data stored in the IFMS computer system by comparing the information contained in those printouts to the payroll data stored in the IFMS system. For each of the instances checked, the payroll information was identical to that separately generated and printed from the data stored in the IFMS system. For these reasons, the Court finds those portions of Plaintiff's Exhibit 2 and 3 dealing with payroll costs admissible.

## IV. RESPONSE COSTS:

■ At the conclusion of the hearing, the Court directed the parties to file briefs addressing each item of cost and detailing the evidence, or lack thereof, with respect to each item. However, in Mr. Gurley's Post-trial Brief (Doc. No. 105) and Proposed Findings and Conclusions (Doc. No. 106), he devotes well over half of his brief to a re-argument of the defenses of statute of limitations and lack of subject matter jurisdiction. Mr. Gurley concedes, on the second page of his fifty page brief, that he "recognizes full well that this court has previously rejected his defenses of limitations and failure to properly commence a civil action." (Def.'s Post-trial Br. at 2.) This Court has found these arguments to be without merit on more than one occasion[7] and will not address them again.

■ With respect to the Gurley Pit Site, the government seeks the following response costs:

1) EPA Region 6 and Headquarter payroll expenses;

2) EPA Region 6 and Headquarter travel expenses;

3) EPA indirect costs[8],

---

**6.** The Court notes that the wage rate for each employee could be calculated by dividing the hours worked by the amount paid to each employee.

**7.** These arguments regarding the statute of limitations and lack of subject matter jurisdiction were initially raised in the August 28, 2001 hearing on the Motion for Summary Judgment filed by the United States. The Court denied Mr. Gurley's arguments regarding these defenses in that hearing. On December 31, 2001, Mr. Gurley filed a Motion for Reconsideration (Doc. No. 72) of this Court's August 28, 2001 ruling stating that "Gurley's local lawyer did not do a good job...." (Def.'s Mem. in Supp of Mot. to Recons. at 1.) The Court denied the Motion

for Reconsideration. (Doc. No. 97). On April 23, 2002, two days before the first day of the trial on the amount of the response costs, Mr. Gurley filed a Motion to Dismiss arguing the same defenses (Doc. No. 84) but conceded during the hearing that these issues had been decided against him previously. (Tr. Hrg on Cost, Vol. 1 at 13, Apr. 25, 2002.) This Court denied that motion. The Court then conducted a five day hearing over a period of several months and directed post-trial briefs. In Mr. Gurley's post-trial brief, he again raised these defenses.

**8.** Indirect costs are "costs which, while not attributable to a specific Superfund site, are necessary to operate the Superfund program, and which are allocated to a site based on the

4) expenditures for contracts;

5) expenditures under EPA's inter-agency agreement with the Army Corps of Engineers;

6) funds provided by EPA to the State of Arkansas;

7) funds provided to the Agency for Toxic Substances and Disease Registry ("ATSDR"); [9]

8) prejudgment interest; and

9) Department of Justice (DOJ) enforcement costs.

Specifically, the Cost Summary [10] reveals:

GURLEY SITE 06-39

| | |
|---|---|
| EPA Principal from 3-1-90 to 6-30-01 (no ATSDR) | $ 9,392,225.67 |
| INTEREST (from 9-10-90 to 7-24-02 (no ATSDR) | 4,945,957.85 |
| DOJ | 737,268.86 |
| PAYMENTS | (1,089,260.44) |
| **TOTAL Gurley Pit Site** (after withdrawal of ATSDR costs) | $13,986,191.94 [11] |

SOUTH 8TH STREET 06-H8

| | |
|---|---|
| EPA Principal from inception to 6-30-01 (no ATSDR) | $ 5,596,093.34 |
| INTEREST from 4-24-96 to 7-24-02 (no ATSDR) | 1,822,693.33 |
| DOJ | 868,062.81 |
| PAYMENTS | (1,306,000.00) |
| **TOTAL South 8TH Street Site** | $ 6,980,849.48 |

number of EPA employee hours charged to that site." *United States v. Findett Corp.*, 75 F.Supp.2d 982 (E.D.Mo.1999), *aff'd*, 220 F.3d 842 (8th Cir.2000). They consist of joint or common program-wide expenditures, such as rent, accounting or personnel offices, or management (at both national and regional levels), that cannot be specifically identified with a particular product or Superfund site and, therefore, are allocated among all sites at which the EPA has incurred response costs. See (Tr. Hrg. on Costs, Vol. 2, at 231–32, 263–64, April 26, 2002.)

COMBINED TOTAL FOR GURLEY PIT SITE AND SOUTH 8TH STREET SITE $20,967,041.42

(unreimbursed and past costs)

## V. OBJECTIONS TO RESPONSE COSTS:

With respect to his objections to the government's claim, the only costs Mr. Gurley challenged in his post-trial brief are:

(1) enforcement costs related to both the Gurley Pit Site and South 8th Street Site incurred after the bankruptcy petition date, July 26, 1995.

(2) prejudgment interest with regard to both Sites accruing or incurred after the date that Mr. Gurley filed for bankruptcy, July 26, 1995.

(3) costs rejected by Philip Marino, Mr. Gurley's accountant.

(4) payroll costs questioned by the Court.

(5) contract costs sought by the government at the South 8th Street Site.

Based on Mr. Marino's opinion as to the total billings verified, Mr. Gurley concludes that he "can only be liable for $5,591,824.60 for the Gurley Pit Site and $3,514,077.88 for the South 8th Street Site." (Plf.'s Post-trial Br., Exhibit 2 at 577–78). Mr. Gurley also argues that the damage is divisible and that the amounts he should

9. The United States notes that it has withdrawn its request for reimbursement of the costs and associated interest incurred by the ATSDR in this case.

10. These figures are established by Government's Trial Exhibit 1, the Government's Post Trial Brief and Trial Exhibit 10.

11. The total does not include $1,377,492.00 which represents the $1,786,503.00 judgment from Judge Howard's case in 1992 for costs through 2-28-1990 and interest of $1,516,498.00 through 4-25-2002, less payments of $1,925,509.00.

pay must be reduced by twenty-five percent.

## VI. *FINDINGS AND CONCLUSIONS ON COSTS:*

 Section 107(a) of CERCLA authorizes the United States or a state to recover from liable parties "all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a). "Because the instant case is one brought by one of the three parties[12] listed in § 9607(a)(4)(B), its costs are presumed to be consistent with the NCP." *United States v. Findett Corp.,* 75 F.Supp.2d 982 (E.D.Mo.1999), *aff'd,* 220 F.3d 842 (8th Cir. 2000) (citing *Minnesota v. Kalman W. Abrams Metals, Inc.,* 155 F.3d 1019, 1025 (8th Cir.1998)). "In an action brought by any one of those three parties, the burden of proof as to inconsistency is on the defendant. A defendant 'must demonstrate that the government's response action giving rise to the particular cost is inconsistent with the NCP.'" *United States v. Findett Corp.,* 75 F.Supp.2d at 990 (citing *United States v. Northeastern Pharm. & Chem. Co.,* 810 F.2d 726, 747 (8th Cir. 1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987)). CERCLA "contemplates that those responsible for hazardous waste at each site must bear the full cost of cleanup actions and that those costs necessarily include both direct costs and a proportionate share of indirect costs attributable to each site." *Findett,* 75 F.Supp.2d at 993.

 As previously noted, if the government's response actions are in harmony with the NCP, the costs incurred pursuant to those actions are recoverable from liable parties. *Findett,* 220 F.3d 842, 849–50 (8th Cir.2000); *United States v. Hardage,* 982 F.2d 1436, 1441 (10th Cir.1992), *cert.*

*denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Response costs that are not inconsistent with the NCP are conclusively presumed to be reasonable and therefore recoverable under CERCLA. See *United States v. Dico,* 266 F.3d 864, 879 (8th Cir.2001); *United States v. Findett Corp.,* 220 F.3d at 849; *United States v. Hardage,* 982 F.2d at 1441–1443; *United States v. Northeastern Pharm. and Chem. Co., Inc.,* 810 F.2d at 747–48 (8th Cir.1986); *United States v. Vertac Chem. Corp.,* 33 F.Supp.2d 769, 777 (E.D.Ark. 1998); *United States v. Gurley,* 788 F.Supp. at 1481. The focus of the NCP is on procedures for the selection of response action rather than on "costs", per se:

> The NCP regulates *choice of response action, not costs.* Costs, by themselves, cannot be inconsistent with the NCP. Only response actions-i.e., removal or remedial actions-can be inconsistent with the NCP, which can be demonstrated by a showing that the government's choice of response action was arbitrary and capricious. As long as the government's choice of response action is not inconsistent with the NCP, its costs are presumed to be reasonable and therefore recoverable.

*Hardage,* 982 F.2d at 1443 (emphasis in the original).

The defendant's expert in *Findett* argued the EPA submitted insufficient documentation to substantiate its response costs. The district court, however, concluded that the government had provided sufficient evidentiary support for its motion for partial summary judgment on response costs. As in this case:

> [The government] provided itemized cost summary reports of its payroll costs. Those reports include the names of employees who did Site-related work, the year and the pay period in which

---

12. The federal government, a state, or an in- dian tribe.

they did that work, the hours that they worked, and the corresponding payroll amounts.... The summaries list the employee who traveled, the travel voucher number, the cost of the travel, and the Treasury schedule confirming payment of that cost. With respect to the EPA contractors who worked on the Site, the government has provided contract summaries listing the contractor, contract number, and total contract costs. The summaries set forth the voucher and Treasury schedule numbers supporting those costs and confirming payment thereof.

*Findett,* 75 F.Supp.2d at 991. On appeal, the Eighth Circuit affirmed holding that EPA had submitted sufficient evidence to support its claim for recovery of response costs. *United States v. Findett,* 220 F.3d at 849–50. The Appeals Court reasoned that the alleged missing documentation noted in the defendant's expert report was in fact provided by the EPA to the defendant and the detail sought (for example, progress reports from contractors, audit reports of contacts) was only peripherally related to whether the response costs were actually incurred. *Findett,* at 849.

During the course of the trial of the issue of costs, the United States presented testimony from ten witnesses:

(1) Dennis McBride, an EPA accountant who certified the accuracy and the adequacy of the documentation of the EPA costs;

(2) Cheryl Young, a Corps of Engineers accountant who certified the accuracy and adequacy of the Corps of Engineers costs;

(3) Charles Young, an EPA accountant and expert who testified as to the accuracy and reliability of the EPA's IFMS and EPA's method of calculating indirect costs and annual allocation costs;

(4) Thomas Achinger, an ATSDR accountant who testified regarding the ATSDR costs incurred;

(5) Wiley Wright, an expert Certified Public Accountant ("CPA") who testified regarding the accuracy and adequacy of the documentation of the government's costs;

(6) Todd Hill, a Corps of Engineer project manager who testified regarding the work performed by the Corps of Engineers at the Gurley Pit Site;

(7) Vincent Malott, an EPA project manager who testified regarding work performed at the South 8th Street Site;

(8) Robert Griswold, a former EPA project manager who testified as to the work performed by the EPA at the Gurley Pit Site;

(9) William Kime, an expert CPA who testified by video deposition as to the accuracy and the adequacy of the documentation of the Department of Justice ("DOJ") costs; and

(10) David Weeks, a former EPA project manager who testified by deposition as to work performed at the South 8th Street Site.

The United States supported its costs by a variety of documents including time sheets, travel vouchers, contract invoices, interagency agreement bills and cooperative agreement payment requests. Contract payments were further documented with Project Officer Invoice Approvals and proof of payment, which included the amount and date paid.

The United States notes that although Mr. Gurley did not seek discovery as to the costs incurred by the United States, the United States copied its certified cost packages for the Gurley Pit Site and South 8th Street Sites (approximately 26,000 pages) and forwarded them to counsel for Mr. Gurley well before the hearings. Mr. Gurley presented testimony from one witness, Phillip Marino, an accountant who

testified that he accepted certain of Plaintiff's costs but rejected others.

The Court notes initially that Mr. Gurley did not call a single witness to testify that the response actions selected or implemented at the Gurley Pit or South 8ᵗʰ Street Sites were arbitrary, capricious, or not otherwise in accordance with law. In contrast, witnesses for the United States testified that the response actions selected and implemented at the Gurley Pit Sites and the South 8ᵗʰ Street Sites were cost effective or cost substantially less than other remedies that could have been chosen or performed at the Sites. The Court specifically finds that Mr. Gurley failed to meet his burden to show the response actions at the Gurley Pit Site or the South 8ᵗʰ Street Site were inconsistent with the NCP. This failure of proof is critical. In spite of this finding, the Court will examine each of the five objections raised by Mr. Gurley:

**1. Costs incurred after bankruptcy petition date:** Mr. Gurley argues that if the Court were exercising its bankruptcy jurisdiction and were to determine the government had an allowable claim, the amount of that claim would be calculated as of Gurley's date of filing his bankruptcy petition—July 26, 1995 (citing 11 U.S.C. § 502(b)).[13] Thus, Mr. Gurley argues that the Government's claim, calculated as of the petition date, cannot include "unmatured interest, legal fees and collection costs" accruing or incurred after the petition date (Def.'s Post Tr. Br. at 29).

▉ The Court does not interpret Section 502(b) to mean that legal fees, unmatured interest and collection costs are not recoverable after the filing of the bankruptcy petition. The Court interprets the statute to prohibit the recovery of costs for new work at a site, such as dirt removal,

drilling, the erection of barriers, etc., without the filing of a new claim. Unmatured interest, legal fees and collection costs related to work already performed are recoverable.

**2. Prejudgment Interest after the filing of the bankruptcy petition:**

The United States argues Mr. Gurley has not challenged the accuracy or the adequacy of the documentation of the $6,768,921.00 in prejudgment interest incurred by the United States. Mr. McBride testified that from September 10, 1990, through July 25, 2002, prejudgment interest of $4,945,957.85 accrued on costs incurred at the Gurley Pit Site. He further testified that from April 24, 1996, the date that the United States filed its proof of claim related to the South 8ᵗʰ Street Site, to July 24, 2002, prejudgment interest of $1,822,963.33 accrued on costs incurred at the South 8ᵗʰ Street Site, for a total of $6,768,921.00 at both sites.

Section 107(a) of CERCLA provides that the government is entitled to interest which shall "accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." *See General Elec. Co., v. Litton Bus. Sys., Inc.,* 715 F.Supp. 949, 959 (W.D.Mo.1989), *aff'd,* 920 F.2d 1415 (1990) (court awarded prejudgment interest as response costs); *United States v. Township of Brighton,* 153 F.3d 307, 321 (6th Cir.1998)(prejudgment interest recoverable); *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1505, *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990) (affirmed district court award to government of prejudgment interest). Based upon these findings and the case law, the Court finds the United

---

**13.** "[T]he Court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition and shall allow such claim in such amount . . . ."

States is entitled to prejudgment interest in the amounts requested.

### 3. Costs rejected by Philip Marino:

█ Mr. Marino, Mr. Gurley's accountant, disputes certain costs due to lack of authorization; costs that are inadequate or contain unrelated backup documents; costs where the amounts on the backup documentation did not agree with the invoice or summary listing; costs where no wage rates for the payroll hours were provided; costs which were illegible; costs which were duplicative; costs where the site was not identified; and invoices whether there was no connection to the EPA's summary of the billings. However, Mr. Marino did not testify that these deficiencies made him question whether the expenses were actually incurred or that the response action taken was arbitrary, capricious, and not consistent with the NCP.

As previously noted, the Eighth Circuit in *United States v. Findett*, 220 F.3d 842 (8th Cir.2000) affirmed the holding of the district court that EPA had submitted sufficient evidence to support its claim for recovery of response costs. The Court reasoned that the alleged missing documentation noted in the defendant's expert report was in fact provided by the EPA to the defendant and the detail sought (for example, progress reports from contractors, audit reports of contacts) was only peripherally related to whether the response costs were actually incurred. *See Findett*, 220 F.3d at 849. This Court finds, from the testimony of the witnesses for the United States and the 26,000 pages of underlying documentation, the summaries of the costs, and the lack of challenge by Mr. Gurley, that the United States made a prima facie case and Mr. Gurley has failed to show the costs are inconsistent with the NCP.

### 4. Payroll Costs questioned by the Court:

█ Mr. McBride testified that from March 1, 1990, through July 31, 2001, the EPA incurred regional payroll costs of $189,736.00 and headquarters payroll costs of $5,514.00, for a total of $195,251.00 in connection with the Gurley Pit Site. Mr. McBride indicated that from inception through June 30, 2001, the EPA incurred regional payroll costs of $388,067.00, and the headquarters payroll costs of $9,442.00 for a total off $397,509.00 for the South 8th Street Site.. Thus, the EPA incurred a combined total of $592,761.00 in un-reimbursed regional and headquarters payroll costs at the Gurley Pit and South 8th Street Sites.

As previously noted in the discussion of the admissibility of these costs, the Court noted that all of the accountants who testified, including Mr. Gurley's, verified that the EPA payroll charges were accurate and reasonable. Significantly, Mr. Marino, Mr. Gurley's accountant, did not propose the rejection of any of the EPA's payroll charges for lack of wage rate. On cross-examination, he stated:

Q. Yet when you looked at it, the regional payroll costs, you did not reject any of them for that code D, did you?

A. No.

Q. Why was that?

A. Because there was a document that had the total number of dollars for—say Mr. Jones worked eight hours on Gurley Pit, and there would be an extension of how much he was paid, and that work paper or printout, the totals on those matched the summary listings. And so even though I wasn't able to verify whether those dollar amounts were accurate, I tested some of them to see if they seemed outrageous, as far as rate. But I didn't have any way of really verifying what that person's monthly or annual or hourly rate was.

Q. And it was for that same reason that you did some testing and the dollars passed the reasonableness test in your own mind, isn't that right?

A. Yes.

(Tr. Hrg. on Costs, Vol. 3, at 517–18, July 4, 2002). The Court finds the payroll summaries are sufficiently supported by the underlying documentation and were sufficiently randomly tested by witnesses for both parties. Based on these witnesses' testimony, the payroll summaries accurately reflect the costs incurred in payroll expenses and are not inconsistent with the NCP.

**5. Contract costs at South 8th Street for the two month period before CERCLA became effective:**

■■■ Mr. Gurley argues that the government seeks contract costs from October 1, 1980 through November 30, 1990 on the South 8th Street Site despite the fact that CERCLA did not become law until December, 1980. There is one document concerning Remedial Contract, CH2M Hill 68–01–6692, which shows a date of service from 10/1/80 to 9/30/85 in the amount of $52,931.71. This time period includes two months of work before CERCLA was enacted. The period time of this contract covered 59 months. Since two of the months were before the enactment of CERCLA, the Court will deduct $1,794.30 ($52,931.71 divided by 59 equals $897.15 times 2 months equals $1794.30) from the total cost of $52,931.71 for a revised total of $51,137.41.

## VII. *JOINT & SEVERAL LIABILITY AT SOUTH 8TH STREET SITE:*

■■■ Mr. Gurley argues that because the United States was a Potentially Responsible Party ("PRP") in this matter, the government should be limited to a claim for contribution under Section 113 of CERCLA, 42 U.S.C. § 9613(f) rather than a joint and several liability claim under Section 107, 42 U.S.C. § 9607(a)(3). The United States responds that the authority to impose joint and several liability on liable parties is an integral element of the special role that CERCLA carves out for the United States and the EPA in protecting the public from the release of hazardous substance.

Under Section 107(a)(4)(A) of CERCLA, Congress authorized the United States, or a state or an indian tribe to recover, from responsible parties, "all costs of removal or remedial action incurred· . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). In contrast, Section 107(a)(4)(B) of CERCLA, Congress only authorized any other party to recover other necessary costs of response incurred consistent with the national contingency plan. 42 U.S.C. § 9607(a)(4)(B). The United States cites legislative history of CERCLA and argues that it shows that Congress intended that the United States is entitled to seek joint and several liability regardless of whether it might also be a PRP. The United States relies on a Congressional comment made during the enactment of Section 113(f), the contribution provision of CERCLA, where Congress specifically considered and rejected defendant's argument:

> This section does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107, or injunctive relief under Section 106, whether or not the United States was an owner or operator of a facility or a generator of waste at the site.

H.R.Rep. No. 99–253, pt. 1 at 79–80 (1985) reprinted in 1986 U.S.C.C.A.N. 2835, 2861–62. Numerous cases hold that the United States is entitled to have private parties held jointly and severally liable under Section 107 of CERCLA, even in certain federal agencies are themselves PRPs. *See State of California Dep't of Toxic Sub-*

stances Control v. Alco Pacific, Inc., 217 F.Supp.2d 1028, 1036 (C.D.Cal.2002); State of New York v. Moulds Holding Corp., 196 F.Supp.2d 210, 214–15 (N.D.N.Y.2002); United States v. Chrysler Corp., 157 F.Supp.2d 849, 858–59 (N.D.Ohio 2001); United States v. Manzo, 182 F.Supp.2d 385 (D.N.J.2000); United States v. Friedland, 152 F.Supp.2d 1234, 1246–49 (D.Colo. 2001); United States v. Hunter, 70 F.Supp.2d 1100, 1104–07 (C.D.Cal.1999); United States v. Wallace, 961 F.Supp. 969 (N.D.Tex.1996); United States v. Kramer, 757 F.Supp. 397, 413–417 (D.N.J.1991); United States v. Western Processing Co., 734 F.Supp. 930 (W.D.Wash.1990).

The cases cited by Mr. Gurley[14] involve private parties, and not the United States, a state or an indian tribe. Mr. Gurley's most recent submission refers to a holding that private party plaintiffs who had entered into a Consent Decree with the United States and the State of Arkansas in the cases of United States v. Aircraft Service Int'l, Inc., No. J–C–98–362 (E.D.Ark.) and Arkansas Dep't of Pollution Control and Ecology v. Aircraft Service Int'l, Inc., No. J–C–98–363 (E.D.Ark.) were precluded from bringing joint and several claims under Section 107 of CERCLA against nonsettling PRPs. These cases are clearly distinguishable from the cases brought by the United States. Given the plain language of the statute, the legislative history of CERCLA and well-established precedent, Mr. Gurley must be held jointly and severally liable to the United States under CERCLA at the South 8th Street Site.

Finally, Mr. Gurley argues that he is not jointly and severally liable because the Gurley operation dumped its waste primarily in the oily sludge pit at the Site. The United States responds that Mr. Gurley has not met his burden to show either distinct harms or a reasonable basis for apportioning a single harm to public health and the environment at the South 8th Street Site. See e.g. United States v. Hercules, 247 F.3d 706, 716–18 (8th Cir.2001); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 939 n. 4 (8th Cir.1995). The evidence at trial revealed that although the oily sludge pit located within Area 2 at the Site contained the highest concentration of hazardous substances, lower concentrations of similar hazardous substances were located throughout Areas 1, 2, and 3 of the Site. Both Columbus Burroughs and Lee Fielder testified at the trial on liability that there was substantial flooding at the Site during the 1960s which caused commingling of contaminants (Liability Tr. at 39). Dr. Eugene Meyer testified that due to the commingling of waste from the Gurley operation and other sources it was impossible to determine whose hazardous substances were released at which locations at the Site. Mr. Gurley offered no evidence at trial that hazardous substances found beyond the oily sludge pit but within other areas of the Site were distinct from similar hazardous substances dumped by the Gurley operation. Nor did he present any evidence that the hazardous substances dumped by his operation did not migrate throughout the Site. Thus, the Court finds that Mr. Gurley did not meet

14. United Technologies v. Browning–Ferris Industries, 33 F.3d 96 (1st Cir.1994); Bedford Affiliates v. Sills, 156 F.3d 416 (2nd Cir.1998); New Castle County v. Halliburton NUS, 111 F.3d 1116 (3rd Cir.1997); Pneumo Abex v. High Point Thomasville & Denton, 142 F.3d 769 (4th Cir.1998); OHM Remediation Services v. Evans Cooperage Co., 116 F.3d 1574 (5th Cir.1997); Centerior Service Co. v. Acme Scrap Iron & Metal, 153 F.3d 344 (6th Cir. 1998); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761 (7th Cir.1994); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298 (9th Cir.1997); United States v. Colorado & Eastern R. Co., 50 F.3d 1530 (10th Cir.1995); and Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489 (11th Cir.1996).

his burden to show a preponderance of concrete and specific evidence of a divisibility of harm at the South 8th Street Site.

## VIII. *CONCLUSION:*

It is, therefore, ORDERED (1) the payroll documents referenced in Government Exhibits 2 and 3, are admitted into evidence in this case; (2) the United States is entitled to response cost at the Gurley Pit Site in the amount of $13,986,191.94, plus interest from July 24, 2002 until the date of judgment, plus post judgment interest at the rate of 1.23 % until paid; (3) the United States is entitled to response costs at the South 8th Street Site in the amount of $6,979,055.18 [15] plus interest from July 24, 2002 until the date of judgment, plus post judgment interest at the rate of 1.23 % until paid, plus a declaratory judgment for all future response costs and interest at the South 8th Street Site; and (4) the State of Arkansas is entitled to a declaratory judgment for all future response costs incurred by the State at the South 8th Street Site. Judgment shall be entered in accordance with this Memorandum Opinion.

---

**15.** The costs at the South 8th Street Site were $6,980,849.48 minus $1,794.30 (proportionate cost of work performed prior to the enactment of CERCLA).